UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 30, 2018

SEAN F. McAVOY, CLERK

LISA MARIE P. N.,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

No. 2:17-CV-00160-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

     Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12 & 17.  Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C § 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

# I. Jurisdiction

Plaintiff filed her application for Supplemental Security Income on February 11, 2013. AR 230-36. Her amended alleged onset date of disability is February 11, 2013. AR 13, 40. Plaintiff's application was initially denied on May 1, 2013, AR 121-24, and on reconsideration on July 15, 2013, AR 128-29.

A hearing with Administrative Law Judge ("ALJ") Caroline Siderius occurred on July 23, 2015, AR 37-59, and on September 24, 2015, AR 60-98. On October 22, 2015, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 11-30. The Appeals Council denied Plaintiff's request for review on March 15, 2017, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on May 10, 2017. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or he is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 44 years old at the alleged date of onset. AR 230. She has a high school education and at least four years of college and she is able to communicate in English. AR 264, 266. Plaintiff has past work as a call center employee, check processor, checker, and nanny. AR 29, 254, 266. Plaintiff has a history of alcohol abuse and methamphetamine and cocaine use. *See* AR 16, 21-25, 43.

\\

\\

# V.     The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from February 11, 2013, through the date of the ALJ's decision. AR 14, 29-30.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 11, 2013 (citing 20 C.F.R. § 416.971 *et seq.*). AR 15.

**At step two**, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, obesity, sleep disorder, personality disorder, affective disorder, and anxiety disorder (citing 20 C.F.R. § 416.920(c)). AR 15.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 17.

**At step four**, the ALJ found Plaintiff had the residual functional capacity to perform less than medium work, except: she can lift thirty pounds occasionally and fifteen pounds frequently; sit up to six hours in a day; stand/walk up to six hours in a day, one hour at a time; no climbing ladders, ropes, or scaffolds; no operation of heavy machinery or equipment; no work at unprotected heights; she could do simple repetitive tasks with only occasional detailed work; no jobs with more than occasional use of independent decision making; occasional brief contact with the

general public; and occasional non-collaborative contact with coworkers. AR 18-19.

The ALJ found Plaintiff able to perform her past relevant work as a check processor as it is actually and generally performed. AR 22.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly discrediting Plaintiff's subjective complaint testimony; (2) improperly evaluating the medical opinion evidence; and (3) improperly assessing Plaintiff's residual functional capacity.

## VII.    Discussion

### A. The ALJ did not err in finding Plaintiff's subjective complaints not entirely credible.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the

severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 20. The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 18-25.

In this case, the ALJ found evidence of malingering. AR 16, 23, 25. This is supported by the record. *See Benton ex. el. Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir.2003) (finding of affirmative evidence of malingering will support a rejection of a claimant's testimony). The ALJ noted that Plaintiff's mental testing

performed by Dr. Mabee was invalid because Plaintiff was over reporting her symptoms and likely exaggerating her current emotional functioning; Dr. Mabee thought this might be a done as a plea for help. AR 16, 23, 390. Dr. Zwart noted that there is a question of malingering and her results should be interpreted with caution, and this may be a function of personality disorder. AR 25, 667. In May 2013, during a psychiatric consult it was noted that Plaintiff's tests suggest over-reporting of symptoms and she may be subjectively reporting symptoms in excess of those on objective assessment. AR 447. Dr. Harmon reported that Plaintiff is providing exaggerated, unrealistic information about her mental health difficulties. AR 403. In 2015, Plaintiff reported to her therapists that she will manipulate her way out of talking about what needs to be addressed. AR 25, 756.

In addition to malingering, the ALJ provided multiple clear and convincing reasons to discount Plaintiff's credibility that are supported by the record. AR 18-25. The ALJ found Plaintiff's allegations of disabling limitations are belied by her daily activities and her credibility is effected by her many inconsistent statements. *Id*. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). An ALJ may rely on ordinary techniques of credibility evaluation such as a witness's prior inconsistent statements. *Tommasetti*, 533 F.3d at 1039.

Specifically, the ALJ noted that Plaintiff testified that her anxiety prevented her from going anywhere. She testified that she sat in her bedroom all day long except to shower or clean. AR 76. However, in August 2013, she told her therapist that she kept "pretty busy". AR 527. Plaintiff, at different times, reportedly went to the casino alone, went to the casino with a friend, and went gambling. AR 20, 505, 760. Plaintiff was also able to travel to Arizona to visit her mother in December 2013 and December 2014. AR 670, 779. And Plaintiff testified that she drove hours to visit her daughter in Idaho. AR 85-86. Furthermore, although Plaintiff reported that she did not spend time with others and was isolated; however, she discussed friends in therapy, testified that she spent time with a friend shopping and going to the casino, regularly attended group meetings, had a year-long sexual relationship, and regularly has other people that she lets live with her. AR 18-25, 84, 468, 480, 501. Plaintiff is also able to live on her own and take care of all of her daily needs. AR 18-25, 666. The ALJ reasonably found that Plaintiff's daily activities and inconsistent statements contradict her allegations of total disability.

The ALJ also noted frequent and repeated inconsistent statements regarding her substance abuse. AR 18-25. An ALJ may weigh a claimant's inconsistent

statements about their drug use against the credibility of their allegations. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Specifically, noted that Plaintiff told a doctor in 2013 that she had not used any alcohol in two years and had not used methamphetamine in 8 years. AR. 390. However, just one month prior to making this statement, Plaintiff was intoxicated and tested positive for methamphetamines. AR 338, 373. Plaintiff testified at the hearing that she stopped drinking in February 2013. AR 91. However, in May 2013, she reported consuming three beers the prior day and admitting to consuming alcohol three days in row the week before. AR 444, 451. Throughout 2013 and 2014, Plaintiff continued to make inconsistent statements to her providers regarding her substance abuse. AR 508, 526, 544. In September 2014, Plaintiff's therapist questioned Plaintiff's claims of abstinence due to Plaintiff's continued reports of the ineffectiveness of her medication. AR 21.

The ALJ also found that Plaintiff's allegations of complete disability are not supported by the objective medical evidence and contradicted by the medical findings in the record. AR 18-25. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*,

242 F.3d 1144, 1148 (9th Cir. 2001). There were minimal objective findings in the record to support Plaintiff's claims of physical limitations. In December 2012, her doctor reported no secondary signs or symptoms and she ambulated without assistance. AR 340. In May 2013, Plaintiff reported that medications helped her pain. AR 445. Imaging of Plaintiff's spine showed only minor degenerative changes at L4-5 and L5-S1. AR 382. An examination showed that Plaintiff had no spasm to palpation, 5/5 strength in her lower extremities, and normal ambulation without an assistive device. AR 384. In December 2013, Plaintiff stated that Gabapentin worked to control her back pain. AR 670. She complained of worsening back pain in August 2014; however, there were no objective findings to explain her reported symptoms. AR 685-86. The ALJ appropriately noted that the medical evidence did not support the claimed severity of Plaintiff's sleep disorder. AR 22-23. The ALJ also noted that Plaintiff's mental limitation claims are contradicted by the record. Dr. W. Scott Mabee, M.D. found Plaintiff had an invalid profile due to over reporting of negative symptoms and likely exaggeration of her current functioning. AR 390. Plaintiff was frequently found to have normal affect, not be anxious, and behaved appropriately for her age. AR 408. On exam, Plaintiff was cooperative, had normal thought processes, had euthymic affect, and fair judgment. AR 538-39. And in March 2014, Plaintiff's mental status, mood, and affect were within normal limits. AR 467.

Further, the ALJ discounted Plaintiff's credibility due to noncompliance with treatment. *Molina*, 674 F.3d at 1114; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony."). Despite recommendations from her doctors that she partake in physical therapy, AR 384, 408, Plaintiff did not actually attend physical therapy until August 2014, AR 718, and she was noncompliant with her at-home exercises, AR 725.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Plaintiff's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

**B. The ALJ properly weighed the medical opinion evidence.**

**a. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating

providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Additionally, "other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-

medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

### b.  W. Scott Mabee, Ph.D.

Dr. Mabee is an examining doctor who completed a psychological evaluation for the Washington State Department of Social and Health Services in January 2013. AR 27, 389-97. Dr. Mabee opined that Plaintiff had moderate to marked limitation in many areas of functioning. AR 391.

The ALJ assigned little weight to Dr. Mabee's opinion for multiple valid reasons. AR 27. First, the ALJ noted that the opinion is largely based on Plaintiff's subjective complaints that have been found not entirely credible. AR 27. Dr. Mabee declared the mental testing invalid due to over reporting of her negative symptoms and her profile cannot be interpreted because her scores are likely an exaggeration of her current emotional functioning. AR 390. There is no evidence Dr. Mabee reviewed any medical records and was left primarily with the clinical interview that provides a description of Plaintiff's subjective complaints. AR 27,

389-90. An ALJ may discount even a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *See also Williamson v. Comm'r of Soc. Sec.*, 438 F. App'x 609, 611 (9th Cir. 2011) (ALJ did not err in affording less weight to opinion of treating physician as to severity of claimant's symptoms, where physician acknowledged that her conclusions were tentative and might over-represent degree of pathology because objective testing showed exaggeration by claimant). Additionally, the ALJ found Dr. Mabee's opinion was not supported by his own mental status examination. AR 27. Dr. Mabee noted that Plaintiff had appropriate appearance, normal speech, normal eye contact, and goal directed thought content, she scored 29/30 on the mini mental status exam and she tested normal in other areas of testing, such as the trail making test, and she had mostly normal judgment and insight. AR 394-95. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also*

*Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Mabee's opinion.

### c. Kaylee Islam Zwart, Ph.D.

Dr. Zwart is an examining psychologist who performed a psychological evaluation in November 2014. AR 26-27, 660-68. Dr. Zwart opined that Plaintiff would have moderate to marked limitations in many areas of cognitive and social functioning. AR 662.

The ALJ assigned little weight to Dr. Zwart's opinion for multiple valid reasons. AR 26-27. First, the ALJ found that the overall evidence, which demonstrates generally mild or benign findings, did not support the degree of limitation in the opinion. AR 27. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-603 (9th Cir. 1999). Next, the ALJ found Dr. Zwart's limitations opinion was not supported by her own mental status examination. AR 27. In fact, Dr. Zwart observed that Plaintiff arrived early for her appointment, was oriented times four, had normal eye contact and appropriate affect, was well groomed, and seemed of average intelligence. AR 666-67. Dr. Zwart found Plaintiff's thought process and content, orientation, perception,

memory, fund of knowledge, concentration, abstract thought, and insight and judgement were all within normal limits. AR 663. Plaintiff scored 30 out of 30 on the mini mental status exam and had mostly normal results on other areas of mental testing. AR 667. Dr. Zwart also noted that there was a question of malingering and that the test results should be interpreted with caution. AR 667. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Lastly, the ALJ noted that Dr. Zwart did not review any medical records and the opinion was based in part on Plaintiff's self-reports that have been found not entirely credible. AR 27. Indeed, a significant portion of Dr. Zwart's notes are statements of what Plaintiff told her. AR 664-66. An ALJ may discount even a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162; *See also Williamson*, 438 F. App'x at 611 (ALJ did not err in affording less weight to opinion of treating physician as to severity of claimant's symptoms, where physician acknowledged that her conclusions were tentative and might over-represent degree of pathology because objective testing showed exaggeration by claimant).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Zwart's opinion.

### d. Dana Harmon, Ph.D.

Dr. Harmon reviewed Plaintiff's medical records in January 2013, for the Department of Health and Services. AR 398-403. Dr. Harmon opined that Plaintiff had moderate to marked limitations in most areas of functioning and Plaintiff could work at a light exertional level. AR 27, 399-400.

The ALJ assigned little weight to Dr. Harmon's opinion for valid reasons. AR 27. First, the ALJ noted that Dr. Harmon's opinion was provided prior to the alleged onset date and when Plaintiff had just begun receiving mental health treatment, and Dr. Harmon lacked significant records, including records of Plaintiff's substance abuse. AR 27. Additionally, the ALJ noted that Dr. Harmon's opinion merely consists of a check-box form with no objective findings or medical explanation for the marked limitations. AR 27, 398-403. Dr. Harmon also found that recent testing responses suggested that Plaintiff provided "exaggerated, unrealistic information about her mental health difficulties." AR 403. "[A]n ALJ

need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Furthermore, check-box form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Additionally, the ALJ found that Plaintiff is limited to less than medium work with additional limitations and identified past relevant work Plaintiff can perform that is a light level job. AR 18-19, 29.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Harmon's opinion.

\\

\\

### e. Jeffery Elmer, M.D.

Plaintiff very briefly contends that the ALJ erred by not exploring Dr. Elmer's diagnosis of "impressive hypersomnia." ECF No. 12 at 17; AR 705. However, this diagnosis does not constitute an opinion by an acceptable medical source. The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairments(s), and [her] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Dr. Elmer's diagnosis contains no mention of a specific severity, Plaintiff's prognosis, how this condition would limit or impair Plaintiff, or what Plaintiff can still do despite her impairments. Thus, the ALJ had no duty to address this brief diagnosis and did not err in not specifically addressing Dr. Elmer's two word diagnosis of "impressive hypersomnia."

### f. Other Consultants

Plaintiff argues the ALJ erred in giving more weight to the opinions of Margaret Moore, Ph.D., James Bailey, Ph.D., Gary Nelson, Ph.D., and Robert Hoskins, M.D. than to some of the other medical opinions in the record. ECF No. 12 at 15-17. The other doctors' opinions have been discussed above. Plaintiff only specifically argues that the ALJ erred in assigning more weight to the opinion of

Dr. Moore because of "Dr. Moore's inexplicable focus on past substance abuse." ECF No. 12 at 16.

However, Plaintiff's disagreement with the weighing of the evidence does not establish error. It is the ALJ, and not the claimant, who is responsible for weighing the evidence for probity and credibility. *See Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Additionally, It is the ALJ's duty to explain why "significant probative evidence has been rejected," rather than explain why it was not. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Furthermore, great weight may legitimately be given to the opinion of a non-examining expert who testifies at a hearing, such as Dr. Moore. *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995). Thus, the Court finds the ALJ did not err in her evaluation of these medical opinions.

\\

### g. Diane Beernink, ARNP.

Plaintiff briefly argues the ALJ erred by not providing clear and convincing reasons for discounting Ms. Beernink's January 2013 opinion that Plaintiff is limited to light work. ECF No. 12 at 17; AR 381. Ms. Beernink's opinion is contradicted by the opinion of Robert Hoskins, M.D. AR 28, 115-17. The opinion testimony of Ms. Beernink falls under the category of "other sources," and the ALJ must give germane reasons for discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

The ALJ did not completely reject Ms. Beernink's opinion, but assigned it partial weight. AR 28. The ALJ stated that partial weight is assigned because the overall opinion is only partially supported by the objective findings. *Id*. Specifically, the ALJ noted that the opinion that Plaintiff is able to work and did not have a disabling condition is consistent with the objective findings that Plaintiff had no spasms to palpitation, ambulated fluidly, and any limitations in work activity were only mild. AR 28, 379-81. Additionally, the ALJ found that Plaintiff is limited to less than medium work with additional limitations and identified past relevant work Plaintiff can perform that is a light level job. AR 18-19, 29.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Ms. Beernink's opinion.

**C. The ALJ properly assessed Plaintiff's residual functional capacity.**

Plaintiff very briefly reargues that her assessed residual functional capacity and the ultimate determination regarding disability did not account for all of her limitations. ECF No. 12 at 18. The Court disagrees. The ALJ specifically stated that all symptoms consistent with the medical evidence were considered in assessing Plaintiff's residual functional capacity. AR 19. The record shows the ALJ did account for the objective medical limitations, so the Court finds no error. The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *See Stubbs-Danielson*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

The ALJ properly framed the hypothetical question addressed to the vocational expert. Additionally, the vocational expert identified a past relevant job that Plaintiff can perform as it is actually and generally performed despite Plaintiff's limitations. AR 29. Thus, the Court finds the ALJ did not err in

assessing Plaintiff's residual functional capacity or in the ultimate determination regarding disability.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 17,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 30th day of July, 2018.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge